AO 106 (Rev. 04/10) Application for a Search Warrant

FILED
US DISTRICT COURT
WESTERN DISTRICT
OF ARKANSAS
Dec 18, 2023
OFFICE OF THE CLERK

# UNITED STATES DISTRICT COURT

for the

Western District of Arkansas ▾

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>INFORMATION ASSOCIATED WITH FACEBOOK<br>ACCOUNT 100087278624176 THAT IS STORED AT<br>PREMISES CONTROLLED BY META PLATFORMS,<br>INC. | )<br>)<br>)<br>)<br>)<br>) | Case No.   2:23-cm-68 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the ____Northern____ District of ____California____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. 841(a)(1) & 846 | Controlled Substance Offenses, Conspiracy |
| 18 U.S.C. 1956 & 1957 | Laundering of Monetary Instruments |

The application is based on these facts:

See attached Affidavit of FBI SA Matthew Ferguson

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Matthew K. Ferguson*
*Applicant's signature*

FBI SA Matthew Ferguson
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 12/18/23

City and state: Fort Smith, Arkansas

*Judge's signature*

Hon. Mark E. Ford, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

**Property to Be Searched**

This warrant applies to information associated with Facebook account **100087278624176** that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered in Menlo Park, California.

## ATTACHMENT B

### Particular Things to be Seized

I.    **Information to be disclosed by Meta Platforms, Inc. ("Meta")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Meta, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Meta is required to disclose the following information to the government for each user ID listed in Attachment A:

(a)    All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)    All activity logs for the account and all other documents showing the user's posts and other Facebook activities from January 1, 2023 through the date of the signing of this search warrant.

(c)    All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them January 1, 2023 through the date of the signing of this search warrant, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(d)    All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which

the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)     All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, advertising ID, and user agent string;

(f)     All other records and contents of communications and messages made or received by the user January 1, 2023 through the date of the signing of this search warrant, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(g)     All "check ins" and other location information;

(h)     All IP logs, including all records of the IP addresses that logged into the account;

(i)     All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(j)     All information about the Facebook pages that the account is or was a "fan" of;

(k)     All past and present lists of friends created by the account;

(l)     All records of Facebook searches performed by the account January 1, 2023 through the date of the signing of this search warrant;

(m)    All information about the user's access and use of Facebook Marketplace;

(n)     The types of service utilized by the user;

    (o)    The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

    (p)    All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

    (q)    Records of any Facebook accounts that are linked to the account by machine cookies (meaning all Facebook user IDs that logged into Facebook by the same machine as the account); and

    (r)    All records pertaining to communications between Meta and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

Meta is hereby ordered to disclose the above information to the government within **14 days** of issuance of this warrant.

**II.**    **Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 21 U.S.C. §§ 841(a)(1) & 846; and 18 U.S.C. §§ 1956 & 1957 involving Whitney LAXTON-CLAYBAUGH since January 1, 2023, including, for each user ID identified on Attachment A, information pertaining to the following matters:

    (a)    The trafficking of controlled substances;

    (b)    The laundering of monetary instruments;

    (c)    Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and

events relating to the crime under investigation and to the Facebook account owner;

(d)     Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

(e)     The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

4

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH FACEBOOK ACCOUNT **100087278624176** THAT IS STORED AT PREMISES CONTROLLED BY META PLATFORMS, INC. | **Filed Under Seal** |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Matthew Ferguson, Special Agent with the Federal Bureau of Investigation (FBI) being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook account that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc. ("Meta"), a company headquartered in Menlo Park, California.   The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Meta to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the account.

2.     I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant.  I have been employed as a Special Agent with the FBI since September 2009. Prior to my employment with the FBI, I was employed as a Police Officer and Narcotics Officer by the City of North Little

Rock, Arkansas Police Department from 2004 to 2009. I am currently assigned to the FBI Little Rock Division, Fort Smith Resident Agency where I am tasked with conducting criminal enterprise investigations. During my career as a Special Agent, I have been involved in a wide variety of investigative matters, including investigations targeting criminal enterprises involved in the unlawful distribution of controlled substances in violation of 21 U.S.C. §§ 841(a)(1) and 846; and the laundering of monetary instruments in violation of 18 U.S.C. §§ 1956 and 1957. During the course of these investigations, I have authored and reviewed multiple Title III wire intercept affidavits, coordinated the execution of search and arrest warrants, conducted physical surveillance, participated in controlled purchases with confidential sources, analyzed records documenting the purchase and sale of illegal drugs, and communicated with other local and federal law enforcement officers regarding the manner in which drug distributors obtain, finance, store, manufacture, transport, and distribute their illegal drugs. Through my training and experience I have become familiar with the manners in which illegal drugs are imported, distributed, and sold, as well as the methods used by drug dealers to disguise the source and nature of their profits.

3.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

4.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841(a)(1) and 846; and Title 18, United States Code, Sections 1956 and 1957, have been committed by **Whitney LAXTON-CLAYBAUGH**. There is also probable cause to search the

information described in Attachment A for evidence of these crimes, and contraband or fruits of these crimes, as described in Attachment B.

## PROBABLE CAUSE

5.    Special Agents (SA) and Task Force Officers (TFO) of the FBI Fort Smith Resident Agency along with other law enforcement officers are investigating a Drug Trafficking Organization (DTO) led by **LAXTON-CLAYBAUGH** and others both known and yet unknown through this investigation. To date, investigating SAs and Officers have identified multiple individuals who are involved in the DTO's illicit drug trafficking and distribution activities. Further, it is known through this investigation that these individuals utilize cellular telephones to communicate and coordinate their drug trafficking activities.

6.    During the course of this investigation, Affiant has had the opportunity to interview multiple Confidential Sources (CS) who are cooperating with law enforcement.

        a.    Confidential Source 1 (CS-1) is cooperating with law enforcement in effort to lessen punishment for a recent drug arrest and admitted to obtaining large quantities of methamphetamine from **LAXTON-CLAYBAUGH** prior to his/her arrest. Throughout the course of this investigation, CS-1 has provided information and assistance that has been independently corroborated by law enforcement.

        a.    Confidential Source 2 (CS-2) is cooperating with law enforcement in effort to lessen punishment for a recent drug and firearms arrest. CS-2 has provided information which has been corroborated independently by law enforcement.

7.    Through this investigation, investigators have identified the Facebook Account being used by **LAXTON-CLAYBAUGH** with screen name "Whitney Laxton-Claybaugh,"

3

assigned the Facebook account number **100087278624176**, which is the account that is the subject of this application (hereafter the **TARGET ACCOUNT**).

8.　　　Through my investigation, Affiant has identified one of **LAXTON-CLAYBAUGH's** methamphetamine and fentanyl suppliers as Ulises Rodriguez, a subject who resides in Mexico but is known to law enforcement as a significant methamphetamine and fentanyl trafficker who has access to large quantities of methamphetamine and fentanyl which he distributes through a network of associates throughout the United States. Rodriguez mainly uses Oklahoma City as his base of operations and has multiple subordinates who distribute his illicit drugs and launder the drug proceeds. Through multiple interviews of subjects and CSs involved in **LAXTON-CLAYBAUGH's** drug trafficking activity, Affiant knows she and/or her associates travel to Oklahoma City to obtain supplies of methamphetamine and fentanyl and return to the Western District of Arkansas to distribute the drugs. Based on this knowledge, Affiant was able to de-conflict operations and information with other law enforcement agencies who are actively investigating Rodriguez's drug trafficking activities. This deconfliction has led Affiant to a better understanding of both Rodriguez's and **LAXTON-CLAYBAUGH's** criminal activities.

9.　　　On August 25, 2023, the Honorable Magistrate Judge Amanda Maxfield Green, seated in the Western District of Oklahoma issued a search warrant for the Facebook Account used by Ulises Rodriguez (Facebook Username: Ulises RI, ID: 100091265327603).[1] Affiant received a copy of the search warrant and the return from Facebook on or about December 6, 2023. Affiant has reviewed a copy of communications produce by Facebook in response to the Western District of Oklahoma search warrant which occurred between **LAXTON-**

---

[1] WDOK Case No. M-23-704-AMG

4

**CLAYBAUGH,** using the **TARGET ACCOUNT,** and Rodriguez. The messages were mainly in Spanish, therefore a translation of the messages was completed by a FBI linguist.

10.     On July 23, 2023, the following pertinent conversation occurred between **LAXTON-CLAYBAUGH** usin the **TARGET ACCOUNT** and Rodriguez using his Facebook account:

7/23/2023 at 19:19 UTC (Universal Time Coordinated) – Whitney Laxton-Claybaugh

*"What's up?"*

7/23/2023 at 19:25 UTC – Ulises RI

*"Hey, can you send me 300 dollars under the name Itzel?"*

*"Just 300."*

7/23/2023 at 19:28 UTC – Whitney Laxton-Claybaugh

*"From the money I'm saving to get to 7000?*

7/23/2023 at 19:31 UTC - Whitney Laxton-Claybaugh

*"We need more work, we're struggling to get all the money."*

7/23/2023 at 20:48 UTC – Ulises RI

*"My friend will have work soon, buddy."*

7/23/2023 at 20:49 UTC – Ulises RI

*"Since he lent us that work, that money belongs to him. He will lend us the new work."*

7/23/2023 at 20:50 UTC – Whitney Laxton-Claybaugh

*"Ok, I'm still trying to gather 7000."*

*"I'm almost there."*

7/23/2023 at 20:51 UTC – Whitney Laxton-Claybaugh

5

*"But do you want me to send you 300 from that money?"*

7/23/2023 at 20:51 UTC – Ulises RI

*"Yes, friend."*

11.     Based on my training and experience, Affiant believes Rodriguez was trying to get **LAXTON-CLAYBAUGH** to wire transfer him money in the name of "Itzel." Later the same day, Rodriguez again instructed **LAXTON-CLAYBAUGH** to send the money "under the name Itzel Juliana Rios Beltran" and **LAXTON-CLAYBAUGH** acknowledged.

12.     CS-1 was interviewed regarding **LAXTON-CLAYBAUGH's** wire transfer activity and provided the following information: On or about July 23, 2023, **LAXTON-CLAYBAUGH** told CS-1 about obtaining methamphetamine re-supply from her supplier in Oklahoma City and discussed the need to send wire transfers of drug proceeds to her supplier in Mexico to secure the shipment of methamphetamine. **LAXTON-CLAYBAUGH** directed CS-1 to send $300.00 to Itzel Juliana Rios Beltran in Culiacan, Sinaloa, Mexico. CS-1 followed the direction of **LAXTON-CLAYBAUGH** and sent the wire transfer on July 23, 2023, and provided Affiant with a photo of the wire transfer receipt as proof.

13.     During the course of this investigation, Affiant has obtained Western Union wire transfer records for **LAXTON-CLAYBAUGH** through FBI administrative subpoena. A review of the returned documents shows **LAXTON-CLAYBAUGH** sent over $20,000 in Western Union wire transfers to various subjects in Mexico between May and August of 2023, including multiple wire transfers to Itzel Juliana Rios Beltran in Mexico. Affiant believes Rodriguez is the actual recipient of the money **LAXTON-CLAYBAUGH** and the wires are sent to the third parties in order to avoid reporting requirements and in attempts to conceal the true recipient of the drug proceeds.

6

14.     Based on my training and experience, Affiant knows **LAXTON-CLAYBAUGH** was referring to methamphetamine when she stated, "We need more work" during the above conversation. Affiant knows "work" is a commonly used slang term used to refer to methamphetamine by those involved in drug trafficking and distribution. Affiant asserts there is probable cause to believe this conversation involves drug trafficking and money laundering activities between **LAXTON-CLAYBAUGH** and Rodriguez (her drug supplier) and proves **LAXTON-CLAYBAUGH** uses the **TARGET ACCOUNT** in furtherance of her drug trafficking and distribution activities.

15.     On or about July 26, 2023, SAs/TFOs involved in this investigation utilized CS-1 to accompany **LAXTON-CLAYBAUGH** on a trip to Oklahoma City to obtain a re-supply of methamphetamine. This meeting was not recorded by law enforcement; however, CS-1 was in communication with law enforcement and carried a tracking device on his/her person during the trip. **LAXTON-CLAYBAUGH** and CS-1 traveled to Oklahoma City to pick-up a large shipment of methamphetamine from Rodriguez's associates and drive the shipment back to Fort Smith for distribution. Upon return their return to Fort Smith, **LAXTON-CLAYBAUGH** gave CS-1 approximately two pounds of methamphetamine on credit, without requiring payment up front. After the meeting, CS-1 met with law enforcement, who seized the methamphetamine as evidence. This methamphetamine was later sent to the DEA laboratory for analysis and results returned positive for the presence of methamphetamine.

16.     On or about July 28, 2023, CS-1 was utilized to conduct a consensually monitored and recorded meeting with **LAXTON-CLAYBAUGH** during which CS-1 paid **LAXTON-CLAYBAUGH** for a portion of the methamphetamine which had previously provided on credit, or "fronted."

7

17.     On or about July 30, 2023, CS-1 was again utilized to conduct a consensually monitored and recorded meeting with **LAXTON-CLAYBAUGH,** during which CS-1 paid **LAXTON-CLAYBAUGH** for another portion of the previously "fronted" quantity of methamphetamine. CS-1 later reported **LAXTON-CLAYBAUGH** was attempting to gather money in order to pay her supplier and make another methamphetamine re-supply trip.

18.     On July 31, 2023, the following pertinent conversation between **LAXTON-CLAYBAUGH** and Rodriguez occurred using the **TARGET ACCOUNT**, as obtained through the WDOK search warrant return from Facebook:

7/31/2023 at 19:10 UTC – Ulises RI

*"Hey friend, do you have the money so you can go to the city?"*

7/31/2023 at 19:10 UTC – Whitney Laxton-Claybaugh

*"I just woke up. My friend is scared to come… thinks they will try to hurt (him/her)."*

7/31/2023 at 19:10 UTC – Ulises RI

*"No, tell (her/him) that nothing will happen, they won't do anything to (him/her)."*

7/31/2023 at 19:11 UTC – Ulises RI

*"(She/he) just has to deliver it; there's no reason for something to happen."*

7/31/2023 at 19:12 UTC – Whitney Laxton-Claybaugh

*"Ok."*

7/31/2023 at 19:13 UTC – Ulises RI

*"How long until (he/she) arrives in the city? Tell (him/her) to have trust; that nothing will happen."*

*"Everything is fine."*

19.     Based upon my knowledge of this investigation, I believe that during this Facebook conversation, **LAXTON-CLAYBAUGH** was referring to CS-1 traveling to Oklahoma City on **LAXTON-CLAYBAUGH's** behalf to obtain the methamphetamine re-supply and deliver the drug proceeds to Rodriguez as payment for the previous load of methamphetamine. Affiant knows CS-1, at the behest of law enforcement, later refused to travel to Oklahoma City alone and insisted **LAXTON-CLAYBAUGH** also go on the methamphetamine re-supply trip.

20.     On or about August 1, 2023, **LAXTON-CLAYBAUGH** and CS-1 made the trip to Oklahoma City to conduct the methamphetamine re-supply. This trip was surveilled (in part) by FBI SAs/TFOs and, through this surveillance along with a debrief of CS-1, Affiant knows **LAXTON-CLAYBAUGH** obtained methamphetamine from a subject, and made payment for the previous supply of methamphetamine while they were in Oklahoma City. Upon obtaining the methamphetamine re-supply, **LAXTON-CLAYBAUGH** transported the methamphetamine back to Fort Smith where it was stored at a warehousing, or "stash house" location utilized by **LAXTON-CLAYBAUGH**.

21.     On the same date, the return from Facebook on the WDOK search warrant demonstrated that **LAXTON-CLAYBAUGH** utilized the **TARGET ACCOUNT** to coordinate the methamphetamine re-supply with Rodriguez. Pertinent portions of this conversation are, as follows:

8/1/2023 at 1:15 UTC – Ulises RI

*"Can you send it through Western Union?"*

8/1/2023 at 1:17 UTC- Whitney Laxton-Claybaugh

*"Yes, I can send everything I have. We're still waiting for money from other people, but they are taking a long time saying we're stressing them out just like your people."*

9

8/1/2023 at 1:18 UTC – Ulises RI

*"My friend, supposedly you had more than $6000."*

    1:19 UTC - *"How much money do you have?"*

    1:29 UTC – *"Can you take those 6 to the City?"*

8/1/2023 at 1:29 UTC- Whitney Laxton-Claybaugh

*"I will make the trip myself to make sure nothing else happens."*

    1:54 UTC – *"How much exactly was my total debt with the pills before the most recent 5 pounds?"*

8/1/2023 at 1:55 UTC – Ulises RI

*"Well, I think there were about 15,000 remaining from the first tab."*

    1:57 UTC – *"That was for the ice and pills, my friend."*

22.    Based upon my knowledge of this investigation, Affiant believes this conversation directly relates to the later methamphetamine re-supply trip which that **LAXTON-CLAYBAUGH** took and CS-1 witnessed, detailed above. Further, Affiant believes this conversation is further evidence that **LAXTON-CLAYBAUGH** utilizes the **TARGET ACCOUNT** to explicitly discuss methamphetamine trafficking activities.

23.    On or about September 5, 2023, Affiant interviewed CS-2 after he/she was arrested and found to be in possession of a distribution quantity of methamphetamine. During the interview, CS-2 provided the following information: CS-2 has known **LAXTON-CLAYBAUGH** for many years and described her as the "biggest" methamphetamine trafficker in Fort Smith at the time. CS-2 knows **LAXTON-CLAYBAUGH** obtains supplies of methamphetamine from a Hispanic drug supplier in Oklahoma City. CS-2 primarily contacts **LAXTON-CLAYBAUGH** through Facebook using the **TARGET ACCOUNT** to obtain re-

supplies of methamphetamine. CS-2 obtained the quantity of methamphetamine that was seized at the time of his/her arrest from **LAXTON-CLAYBAUGH** approximately two weeks prior to the interview without requiring payment up front. CS-2 still owed **LAXTON-CLAYBAUGH** payment for the quantity of methamphetamine.

24.     On September 14, 2023, Affiant and other investigators utilized CS-2 to conduct a consensually monitored and recorded controlled meeting with **LAXTON-CLAYBAUGH**. The purpose of this meeting was for CS-2 to make payment for the quantity of methamphetamine previously "fronted" to CS-2 by **LAXTON-CLAYBAUGH**, which was seized by law enforcement at the time of CS-2's arrest. During the meeting, CS-2 paid **LAXTON-CLAYBAUGH** for the "fronted" methamphetamine using FBI evidence purchase funds. The recording of this meeting is maintained as evidence.

25.     Based on this meeting and CS-2's usage of Facebook Messenger to order and arrange drug re-supplies and payments with **LAXTON-CLAYBAUGH** using the **TARGET ACCOUNT**, Affiant believes there is probable cause that **LAXTON-CLAYBAUGH** uses the **TARGET ACCOUNT** to communicate with drug customers and the requested search warrant will aid investigators in identifying her network of distributors and associates operating in the Western District of Arkansas and elsewhere.

26.     Based on the preceding paragraphs, Affiant believes **LAXTON-CLAYBAUGH** is involved in a conspiracy to traffic and distribute methamphetamine, and to launder money through wire transfers, within the Western District of Arkansas and elsewhere, and utilizes the **TARGET ACCOUNT** to coordinate and conspire with her criminal associates. As such, I believe probable cause exists to issue the search warrant which is the subject of this application.

## BACKGROUND CONCERNING FACEBOOK[2]

27.     Meta owns and operates Facebook, a free-access social networking website that can be accessed at http://www.facebook.com.  Facebook users can use their accounts to share communications, news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

28.     Meta asks Facebook users to provide basic contact and personal identifying information either during the registration process or thereafter.  This information may include the user's full name, birth date, gender, e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.  Each Facebook user is assigned a user identification number and can choose a username.

29.     Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network.  Facebook assigns a group identification number to each group.  A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request."  If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other.  Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

---

[2] The information in this section is based on information published by Meta on its Facebook website, including, but not limited to, the following webpages: "Privacy Policy," available at https://www.facebook.com/privacy/policy; "Terms of Service," available at https://www.facebook.com/legal/terms; "Help Center," available at https://www.facebook.com/help; and "Information for Law Enforcement Authorities," available at https://www.facebook.com/safety/groups/law/guidelines/.

30.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts.  By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users.  A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings.  Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

31.     Facebook users can create profiles that include photographs, lists of personal interests, and other information.  Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet.  Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list.  In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times.  A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

32.     Facebook users can upload photos and videos to be posted on their Wall, included in chats, or for other purposes.  Users can "tag" other users in a photo or video, and can be tagged by others.  When a user is tagged in a photo or video, he or she generally receives a notification of the tag and a link to see the photo or video.

33.     Facebook users can use Facebook Messenger to communicate with other users via text, voice, video.  Meta retains instant messages and certain other shared Messenger content

13

unless deleted by the user, and also retains transactional records related to voice and video chats. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.

34.     If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

35.     Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

36.     Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

37.     Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

38.     Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

39.     In addition to the applications described above, Meta provides users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

40. Meta also retains records of which IP addresses were used by an account to log into or out of Facebook, as well as IP address used to take certain actions on the platform. For example, when a user uploads a photo, the user's IP address is retained by Meta along with a timestamp.

41. Meta retains location information associated with Facebook users under some circumstances, such as if a user enables "Location History," "checks-in" to an event, or tags a post with a location.

42. Social networking providers like Meta typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Meta about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Meta typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

43. As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Meta, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a

15

residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Meta logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, location information retained by Meta may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

44.     Therefore, the servers of Meta are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

45.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant

16

to require Meta to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

46.    Based on the foregoing, I request that the Court issue the proposed search warrant.

47.    Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving it on Meta. Because the warrant will be served on Meta, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

48.    This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## REQUEST FOR SEALING

49.    I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed pursuant to Western District of Arkansas local rules until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation.

Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

*Matthew K. Ferguson*

Matthew Ferguson, Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me this __18__ day of December 2023.

Hon. Mark E. Ford
UNITED STATES MAGISTRATE JUDGE

18